IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSUE OSORIO-CANALES, | ) | |
|     ID #49593-177, | ) | |
|         Movant, | ) | |
| vs. | ) | No. 3:17-CV-952-B-BH |
| | ) | No. 3:15-CR-275-B |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
|         Respondent. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the amended *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (doc. 18), received on September 11, 2017, should be **DENIED** with prejudice.

### I.  BACKGROUND

Josue Osorio-Canales (Movant) challenges his federal conviction and sentence in Cause No. 3:15-CR-275-B.  The respondent is the United States of America (Government).

**A.    Plea and Sentencing**

On June 24, 2015, Movant was charged by indictment with transporting and shipping child pornography in violation of 18 U.S.C. § 2252A(a)(1) (count one); and possession of prepubescent child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (counts two and three).  (*See* doc. 14.)[1]  He pleaded guilty to count one on July 22, 2015.  (*See* doc. 24.)

The factual resume stated that between January 31, 2015, and February 14, 2015, a police detective who was investigating the sharing of child pornography through a peer-to-peer file-sharing

---

[1]   Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:15-CR-275-B.

network downloaded files containing child pornography that had been shared through the network.[2] Based on the files downloaded from an IP address associated with Movant, agents obtained and executed a search warrant for Movant's residence. The file-sharing program was running on Movant's computer, and child pornography was found on an external hard drive, three SD cards, and three cell phones. Movant admitted to an agent that he had used the file-sharing network to search for child pornography. He understood how the file-sharing program worked and understood that while he was sharing files, other network users could download child pornography from him. In the factual resume, Movant admitted that he knowingly transported and shipped child pornography by using file-sharing software to share and transmit image and video files of child pornography. (*See* doc. 20 at 1-2.)

On November 19, 2015, the United States Probation Office (USPO) filed a Presentence Report (PSR) in which it applied the 2014 United States Sentencing Guidelines Manual (USSG). (*See* doc. 30-1 at 8, ¶ 26.) If found that the base offense level was 22. (*See id.*, ¶ 27.) Because of offense characteristics and guideline adjustments, the offense level was increased to 44. (*See id.* at 8-9. ¶¶ 28-33.) In particular, a five-level increase under USSG § 2G2.2(b)(3)(B) was assessed because the offense involved distribution, and the distribution was for the expectation of the receipt of a thing of value, i.e., additional child pornography. (*See id.* at 8, ¶ 29.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 41. (*See id.* at 9, ¶¶ 38-40.) Based on a criminal history category of one, the resulting guideline range was 324-405 months' imprisonment. (*See id.* at 16, ¶ 75.) The statutory maximum sentence was 20 years' imprisonment, so the guideline range was 240 months' imprisonment. (*See id.*) On March 9, 2016,

---

[2] The record and case law refer to this type of file-sharing alternatively as a file-sharing network, program, and software.

Movant was sentenced to 216 months' imprisonment, and counts two and three were dismissed. (*See* doc. 45 at 2.) He did not appeal.

**B.    Substantive Claims**

Movant's initial § 2255 motion was received on April 4, 2017. (*See* 3:17-CV-952-B, doc. 1.) His final amended § 2255 motion raises the following ground:

> Counsel was ineffective for failing to properly investigate, object to, or argue against the five-level enhancement under USSG § 2G2.2(b)(3)(B).

(*Id.*, doc. 18 at 2.)[3] The Government filed a response, and Movant filed a reply. (*See* docs. 22, 23.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an

---

[3] After he moved for leave to amend his § 2255 motion but failed to submit a proposed amendment, Movant was ordered to file a final amended § 2255 motion that set forth all the claims that he sought to assert, regardless of whether he had previously asserted the claims in his initial motion or whether the claims were new grounds for relief. (*See* 3:17-CV-952-B, doc. 17.) His final amended § 2255 motion did not raise the claims raised in his initial motion.

ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

4

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

      To show prejudice in the sentencing context, a petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

      Movant contends that he should not have received the five-level increase under USSG § 2G2.2(b)(3)(B) because the use of a file-sharing program did not support a finding that the distribution of child pornography files was done in expectation of receiving a thing of value. He asserts that counsel should have investigated, objected to, and argued against the application of the guideline. He does not claim that there was evidence that counsel should have discovered through investigation.

The 2014 version of § 2G2.2(b)(3)(B) provided for a five-level increase if the distribution was "for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." The commentary to the guideline stated that "in a case involving the bartering of child pornographic material, the 'thing of value' is the child pornographic material received in exchange for other child pornographic material bartered in consideration for the material received." USSG § 2G2.2(b)(3)(B), comment. n.1. The Fifth Circuit has explained:

> [W]hen a defendant knowingly uses peer-to-peer file sharing software, ... he engages in the kind of distribution contemplated by § 2G2.2(b)(3)(B). A peer-to-peer file sharing program 'lets users exchange digital files through a network of linked computers.' By using this software, ... the user agrees to distribute the child pornography on his computer in exchange for additional child pornography. This is precisely the kind of exchange contemplated by § 2G2.2(b)(3)(B).

*United States v. Groce*, 784 F.3d 291, 294-95 (5th Cir. 2015).[4] For the guideline to apply in that scenario, the defendant must have knowingly used the file-sharing software to download and distribute child pornography. *See United States v. Scott*, 821 F.3d 562, 568 (5th Cir. 2016). A defendant who used file-sharing software but did not know that he was distributing child pornography through that software is not subject to the offense level increase under the guideline. *See id.* (case remanded for district court to determine whether the defendant convicted of possession of child pornography knowingly distributed child pornography through file-sharing software).

Here, Movant admitted that he used the file-sharing network to search for child pornography. He understood how the file-sharing software worked and that other network users could download child pornography from him. He admitted that he knowingly transported and shipped child pornography using file-sharing software to share and transmit image and video files of child

---

[4] The guideline and commentary were amended in 2016, after Movant was sentenced, so the 2014 version applied to him. *See United States v. Halverson*, 897 F.3d 645, 651 (5th Cir. 2018) (discussing the differences between the 2016 amendment and the version addressed in *Groce*).

pornography. The guideline applied to him because he knowingly used the file-sharing software and network to distribute child pornography in return for receiving child pornography through the software and network. *See Groce*, 784 F.3d at 294-95. The knowing distribution of child pornography supported "the inference of a knowing, reciprocal exchange or expectation thereof." *Scott*, 821 F.3d at 568.

Movant has not shown that counsel was ineffective for failing to investigate/research, object to, and argue against the application of the guideline. Counsel was not required to make futile objections or arguments. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). He has not shown that he is entitled to relief on his claim.[5]

### IV.  RECOMMENDATION

The motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 should be **DENIED** with prejudice.

**SIGNED on this 3rd day of December, 2018.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] As noted, Movant was ordered to file a final amended § 2255 motion that set out all of the claims he was seeking to assert. (*See* 3:17-CV-952-B, doc. 17.) With one exception, his amended motion did not include the claims in his initial motion, i.e., other instances of ineffective assistance of counsel, involuntary plea, and involuntary waiver of appellate rights. Even if he intended to continue to assert these original claims, he has not shown that he would be entitled to relief on any of them because they are conclusory. (*See* doc. 1 at 8-10.) Allegations are conclusory if they are vague, lack specifics, or are recitations of a legal standard without any supporting factual allegations. *Morris v. Thaler*, 425 F. App'x 415, 423 (2011). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE